## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| JUSTIN A. L., | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | No. 2:19-cv-00325-JDL |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) concluding that his impairments did not meet or equal Listing 12.15, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), (ii) relying on the hearing testimony of mental health expert Richard M. Anderson, Ph.D., that substance abuse was material to the plaintiff's disability, precluding an award of benefits, and (iii) adopting the residual functional capacity ("RFC") opinion of an agency nonexamining consultant, Nicholas Kalfas, Ph.D., who did not have the benefit of review of a substantial portion of the record. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 8-18. I find no error in the ALJ's determination that substance abuse was material to the plaintiff's disability, rendering any

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

error in failing to find that his impairments met or equaled Listing 12.15 harmless, and no error in his adoption of the Kalfas mental RFC assessment. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, Finding 1, Record at 18; that he had the severe impairments of substance abuse, attention deficit hyperactivity disorder ("ADHD"), affective disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and chronic neck pain status post motor vehicle accident, Finding 3, *id.*; that his impairments, including substance use disorder, met Listing 12.04, Finding 4, *id.*; that, if he stopped substance use, he would still have a severe impairment or combination of impairments, Finding 5, *id.* at 20; that, if he stopped substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the Listings, Finding 6, *id.* at 21; that, if he stopped substance use, he would have the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that he could occasionally perform postural activities, would be limited to remembering and understanding simple one- to three-step tasks, could occasionally engage in complicated tasks, and could have occasional exposure to co-workers and supervisors but not to the general public, Finding 7, *id.* at 22; that, if he stopped substance use, considering his age (22 years old, defined as a younger individual, on his alleged disability onset date, February 1, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 9-12, *id.* at 27; and that, because his substance use disorder was a contributing factor material to the determination of

2

disability, he had not been disabled at any time from his alleged onset date of disability, February 1, 2013, through the date of the decision, October 3, 2018, Finding 13, *id*. at 28.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

Absent a material error in an ALJ's resolution of conflicts in the evidence, including the expert opinion evidence of record, this court defers to an ALJ's weighing of such evidence – the core duty of an ALJ.  *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June

11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").

The plaintiff contends that the ALJ erred in relying on Dr. Anderson's testimony that substance abuse was material to the determination of disability and in adopting Dr. Kalfas's mental RFC assessment.  *See* Statement of Errors at 12-18.  I find no error in the ALJ's weighing of that evidence.  The plaintiff's bid for remand on these bases, accordingly, amounts to an invitation to the court to reweigh the evidence, which the court must decline.

## A.  Materiality of Substance Abuse

The need to determine whether substance use is material to disability stems from a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability."  *Bartley v. Barnhart,* 117 F. App'x 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C).

That Contract with America directive was incorporated into the agency's regulations, which provide in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii)  If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).

The ALJ adopted Dr. Anderson's testimony that, when the plaintiff was abusing substances or seeking medication, he presented with marked limitations in the domains of concentrating, persisting, or maintaining pace and adapting or managing himself, thereby meeting the so-called "Paragraph B criteria" of Listings 12.04 and 12.06.  Record at 18-20.[2]

However, the ALJ deemed the plaintiff's substance use material to a finding of disability, concluding, "[i]f the [plaintiff] stopped [his] substance use, [his] remaining limitations would not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15."  *Id*. at 21.  He noted that Dr. Anderson had testified that, regardless of substance use, the plaintiff had only a mild limitation in the domains of understanding, remembering, or applying information and in interacting with others and, if the substance use stopped, he would have a mild limitation in the domain of concentrating, persisting, or maintaining pace and a moderate limitation in the domain of adapting or managing himself.  *See id*.  He explained that, because the plaintiff's mental impairments would not cause at least one extreme limitation or two marked limitations in the absence of substance use, they did not satisfy the Paragraph B criteria of the Listings.  *See id*.

The plaintiff contends that the ALJ erred in finding substance abuse material to his disability because (i) the record reflects that his substance abuse disorder was in remission as of at

---

[2] The Paragraph B criteria, as revised effective January 17, 2017, delineate four domains of mental functioning: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  To satisfy Paragraph B, a claimant must demonstrate either a marked limitation in two of those domains or an extreme limitation in one of them.  *See* Listings 12.04B, 12.06B, 12.15B.

least July 2017, a finding that Dr. Anderson wrongly deemed unconvincing, *see* Statement of Errors at 12, 15, (ii) Dr. Anderson was clear that the plaintiff's drug-seeking behavior solely concerned Xanax and Adderall, yet both had been prescribed by a treating doctor, Rodney Felgate, M.D., removing them from the ambit of substances that constitute drug and alcohol abuse pursuant to Social Security Ruling 13-2p ("SSR 13-2p"), *see id*. at 12-14, (iii) while Dr. Anderson also referenced THC, or marijuana, he did not testify that the plaintiff was addicted to marijuana or that it was material to the determination of disability and, in any event, marijuana, for which the plaintiff has a prescription, is not illegal in the State of Maine, *see id*. at 14, and, (iv) while Dr. Anderson referenced daily alcohol use, he cited only one record in support of that finding and did not testify that the plaintiff was addicted to alcohol or that it was material to the determination of disability, *see id*. at 14, 16.  I find no error.

First, as a general rule, "the court cannot substitute its judgment for that of a medical expert," *Julianne M. F. v. Saul*, No. 1:18-cv-00469-GZS, 2020 WL 616162, at *4 (D. Me. Feb. 10, 2020) (rec. dec., *aff'd* Feb. 25, 2020), and there is no compelling reason to do so here. During a colloquy at hearing with the plaintiff's counsel, Dr. Anderson testified that the July 3, 2017, notation that the plaintiff's substance abuse disorder was in remission "wasn't that convincing" because it was "very likely" that "the need for drugs was still there."  Record at 138-39.  He added that his impression was that, throughout the record, including in July 2017, the plaintiff's "main focus, and the main reason for getting returned to the hospital[,] was looking for medication," and when none was forthcoming, "he wanted to leave."  *Id*. at 139.

The plaintiff's counsel pointed out to Dr. Anderson that the plaintiff had been "blue paper[ed]," or involuntarily admitted to the psychiatric facility, inquiring whether this contradicted his testimony.  *See id*. at 139-40.  He replied, "not directly[,]" explaining that "the craving for and

6

need for the medications" was the plaintiff's "primary motivation . . . for the behaviors which got him committed." *Id*. at 140.  This was a reasonable explanation for Dr. Anderson's skepticism that the plaintiff's substance use disorder was then in remission, and the court cannot substitute its judgment for his.[3]

Beyond that, as the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 11, the ALJ pointed to evidence that (i) the plaintiff repeatedly provided inaccurate histories to medical sources; for example, representing to a treating source in May 2016 that he had a history of use only of marijuana although a drug screen in September 2014 had detected the presence of amphetamine, benzodiazepine, THC, and opiate, *see* Record at 25, 474, 599, and (ii) his substance use was not in remission as of July 2017; for example,  that he used IV heroin in the fall of 2017, *see id*. at 20, 1365 (self-report to provider on January 2, 2018, of one-time use of heroin four months earlier).

There is, thus, substantial evidence that the plaintiff's substance use disorder was not in remission as of July 2017.

Second, that Dr. Anderson testified that the plaintiff's primary functional limitations arose when he was unable to secure the medications he was seeking, Adderall and Xanax (amphetamines and benzodiazepines), *see id.* at 135-36, is not dispositive in the plaintiff's favor.  The plaintiff observes that Dr. Anderson testified that, because "[t]here was a lot of support for the fact that [the plaintiff] was addicted to both of those medications[,] . . . my conclusion would be that he should . . . not be receiving them."  Statement of Errors at 6; Record at 135.  He argues that, "[a]lthough

---

[3] The plaintiff's further argument that Dr. Anderson's unfamiliarity with the term "blue paper" indicates his lack of qualification as an expert, Statement of Errors at 11, 15, is without merit.  The plaintiff cites no evidence of record in support of his assertion that "blue paper" is shorthand for an involuntary psychiatric hospitalization, instead referencing the use of the term in Maine.  *Id*. at 11.  Even assuming, *arguendo*, that it would be appropriate for the court to take judicial notice of terminology associated with Maine's involuntary psychiatric hospitalization procedures, Dr. Anderson practiced psychology in the state of Georgia.  *See* Record at 1804-05.

the medical expert appears to disagree that those medications should be prescribed to [him], the fact is that they are prescribed to [him], and as such, these prescription medications (to which the medical expert believes [he] has an addiction) should not trigger a DAA [drug addiction and alcoholism] analysis" pursuant to SSR 13-2p.  Statement of Errors at 13.

The plaintiff cites SSR 13-2p for the propositions that (i) drug and alcohol abuse does not include "'[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications[,]'" and (ii) "'[a] claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder.'"  *Id.* (quoting SSR 13-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2019), § 1(b) at 479).  At oral argument, his counsel further noted that, pursuant to SSR 13-2p, "[s]elf-reported drug and alcohol use" does not suffice to establish a medically determinable substance use disorder or DAA, SSR 13-2p, § 8(b)(ii) at 486, and "[a] single drug or alcohol test is not sufficient to establish DAA as a medically determinable impairment, nor does it provide pertinent information that can help us determine whether DAA is material to a finding of disability[,]" *id.*, § 8(d)(ii) at 487-88.

However, as the commissioner observes, *see* Opposition at 10, SSR 13-2p defines substance use disorders as "diagnosed in part by the presence of maladaptive use of alcohol, illegal drugs, prescription medications, and toxic substances[,]" SSR 13-2p, § 1(b) at 479.  Dr. Anderson's testimony supports a finding that the plaintiff's use of and craving for Xanax and Adderall, or benzodiazepines and amphetamines generally, were more than occasionally maladaptive, regardless of whether he had prescriptions for them.  In turn, Dr. Anderson did not rely solely on self-reports or a single drug or alcohol test.  He offered his opinion, based on his review of the entire record, that the plaintiff's "ongoing substance abuse and non-adherence to psychotropic

medication and . . . treatment are the primary reasons for his continued symptoms[,]" Record at 129, and that the symptoms the plaintiff described were "directly related to severe substance abuse dependence, including amphetamine and Xanax[,]" *id*. at 131.  He noted, for example, that the plaintiff underwent Xanax detoxification in September 2014, *see id*. at 129, 537, and, in January 2018, his drug screen was positive for amphetamines, benzodiazepines, and THC, *see id*. at 141, 1700.  He further testified that the plaintiff's craving for the medications he was seeking in itself imposed severe functional limitations, as he could focus on little else while in its grip.  *See id*. at 132-33.

In addition to giving great weight to the Anderson testimony, the ALJ also pointed to evidence that included treatment notes indicating frequent solicitation of amphetamine prescriptions, *see id*. at 19, 768, noncompliance with Suboxone treatment and resumption of use of heroin and marijuana, *see id*. at 20, 992, 1017, and a medication overdose, *see id*. at 19, 444.

Finally, while Dr. Anderson testified that the plaintiff had difficulty with functional limitations when unable to secure the medications he was seeking, which he described as "primarily" amphetamines and benzodiazepines, and then, in response to the plaintiff's counsel's question, "[a]nything else[?]" responded, "[n]o[,]" *id*. at 136, his testimony as a whole fairly can be read to indicate that the plaintiff's abuse of other substances contributed to his functional difficulties.  He described "the primary issue" as "poly-substance abuse beginning November of 2013, . . . the cannabis abuse."  *Id*. at 129.  He ascribed moderate to marked limitations in adaptation to "the strong focus" the plaintiff had on obtaining drugs, "either prescribed or . . . not prescribed."  *Id*. at 132-33.  He described "the use of . . . substances and alcohol" as "present throughout the record[,]" stating that if the plaintiff "remained off the substances, including amphetamines and benzodiazepines . . ., I wouldn't expect that there would be any limitations."

*Id.* at 134.   Later, in response to the plaintiff's counsel's question concerning the substances affecting the plaintiff's functional limitations since July 2017, he noted that in January 2018, the plaintiff's drug screen was positive for amphetamines, benzodiazepines, and THC, stating, "[a]dd to this the daily alcohol use with all." *Id.* at 141.[4]

Nothing precluded the ALJ from determining that the plaintiff's use of other substances, such as marijuana and alcohol, constituted additional evidence of the materiality of his substance abuse. *See, e.g., Chanda v. Colvin*, No. 2:15-cv-52-JHR, 2015 WL 6123752, at *10 (D. Me. Oct. 15, 2015) (combination of ALJ's review of longitudinal record and medical expert's testimony constituted substantial evidence in support of ALJ's finding that, in absence of DAA, claimant's functioning would improve to point where he could work full-time).[5]

The ALJ's finding that substance abuse was material to a finding of disability, accordingly, is supported by substantial evidence.   This, in turn, renders harmless any error in failing to find that the plaintiff's PTSD met the criteria of Listing 12.15. *See* Statement of Errors at 8-11.

**B.  Mental RFC Determination**

The ALJ relied on the opinion of agency nonexamining consultant Dr. Kalfas to assess the plaintiff's mental functional limitations in the absence of substance abuse, explaining that Dr. Anderson had not provided a specific function-by-function assessment of the plaintiff's abilities

---

[4] The plaintiff correctly notes that, although Dr. Anderson cited two records in support of a finding of daily alcohol use, they are duplicates, and he, therefore, relied on only one citation for that proposition. *See* Statement of Errors at 14; Record at 141, 1360, 1697.   The plaintiff complains that, in addition to deriving this information from one emergency room intake form, Dr. Anderson ignored the context, including symptoms of suicidal ideation, worrying, hopelessness, anxiety, poor memory, inability to sleep, and feeling scattered, as well as the doctors' recommendation of an inpatient hospitalization and the discharge diagnosis following that hospitalization of schizoaffective disorder, bipolar type. *See* Statement of Errors at 16.   Nonetheless, the cited record supports the proposition for which Dr. Anderson cited it, that the plaintiff was using alcohol daily. *See* Record at 1360, 1697.
[5] That marijuana is legal in Maine had no bearing on the analysis. *See, e.g., Snyder v. Comm'r, Soc. Sec. Admin.*, Case No. 6:15-cv-02400-SU, 2017 WL 2981233, at *11 (D. Or. June 19, 2017) (rec. dec., *aff'd* July 11, 2017) ("It is irrelevant that marijuana is legal under Oregon law, or that plaintiff had a state-issued medical marijuana card, as the problem is lack of compliance with medical instruction and failure to adhere to his representations to a medical provider.") (internal citation omitted).

and limitations and that the record contained no "other persuasive statement regarding the [plaintiff]'s functioning."  Record at 23-24.

The ALJ noted that, "[o]verall, while the record does not show prolonged periods of sobriety, it does clearly show that when the [plaintiff] was compliant with medication, his condition stabilized such that he was able to work multiple jobs with long hours, while engaging in treatment and remain[ing] stable."  *Id*. at 25.  He further explained:

> Dr. Kalfas did not review the evidence of record in its entirety and he did not find drug and alcohol abuse material to the determination.  He did, however, provide a full function-by-function assessment of the [plaintiff]'s abilities and limitations based upon a finding that the [plaintiff]'s substance dependence was in apparent remission.  His assessment of the [plaintiff]'s function is more restrictive than that of Dr. Anderson.  This is consistent, however, with viewing the evidence in the light most favorable to the [plaintiff].  While Dr. Kalfas did not review the medical evidence of record in its entirety, his opinion is not inconsistent with the opinion of Dr. Anderson regarding the [plaintiff]'s functioning in the absence of substance abuse.  His opinion is generally consistent with the evidence of record in its totality.  For these reasons, I give great weight to the opinions of both Dr. Kalfas and Dr. Anderson.

*Id*. at 26.

The plaintiff contends that the ALJ's reliance on the Kalfas opinion constitutes reversible error because Dr. Kalfas did not have the benefit of review of the bulk of the medical evidence of record (more than 1,000 of the 1,800 pages of record), evidencing that the plaintiff had "been hospitalized at least five times, . . . involuntarily admitted to psychiatric facilities, . . . had a number of psychological and psychiatric evaluations, and a significant amount of therapy and counseling and other treatment specifically focusing on his psychiatric, psychological, and mental health conditions since May 2016."  Statement of Errors at 16-17.  He adds that Dr. Kalfas opined that the plaintiff's substance dependence was in remission and his drugs/substance addiction disorder was not severe, directly contradicting the opinion of Dr. Anderson, and the ALJ failed to reconcile or even address those significant discrepancies.  *See id.* at 17.

I find no error.  The mere fact that an agency nonexamining consultant has not reviewed the entirety of a record does not preclude reliance on his or her opinion.  *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.") (citations and internal quotation marks omitted).  The ALJ explained that he adopted the Kalfas opinion precisely because it reflected the plaintiff's limitations during a period of time when his substance dependence was in apparent remission, thereby providing the most accurate function-by-function assessment of record of the plaintiff's limitations in the absence of substance abuse.  *See* Record at 26.  He further explained that the Kalfas opinion was consistent with, albeit more restrictive than, Dr. Anderson's opinion that, in the absence of substance abuse, the plaintiff's mental limitations would be nonexistent to mild.  *See id.*; *see also id.* at 131-34 (Anderson testimony).

The ALJ, accordingly, supportably adopted the Kalfas opinion in setting forth the plaintiff's mental RFC in the absence of substance abuse.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### <u>*NOTICE*</u>

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 3rd day of June, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
